United States District Court
Southern District of Texas
**ENTERED**
December 23, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IMA, INC., § | |
|     Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-19-3500 |
| § | |
| COLUMBIA HOSPITAL MEDICAL § | |
| CITY AT DALLAS, SUBSIDIARY, § | |
| L.P., d/b/a Medical City Dallas Hosp., § | |
|     Defendant. § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion to Stay and Compel Arbitration ("Motion") [Doc. # 9] filed by Defendant Columbia Hospital Medical City at Dallas, Subsidiary, L.P. d/b/a Medical City Dallas Hospital ("Columbia"). Plaintiff IMA, Inc. ("IMA") filed a Response [Doc. # 14], and Defendant filed a Reply [Doc. # 15].[1] Having reviewed the full record and the applicable legal authorities, the Court **denies** the Motion.

## I.  BACKGROUND

IMA is the third-party administrator of the Central Management Company, LLC Employer Health Plan (the "CMC Plan"). Columbia provided medical services to a

---

[1] Also pending is IMA's Motion to Strike and in the Alternative Motion for Leave to File a Sur-Reply ("Motion to Strike") [Doc. # 16]. IMA asks the Court to Strike Exhibit 6 attached to Columbia's Reply. Because Exhibit 6 does not support the Motion to Compel Arbitration, the Court **denies** the Motion to Strike.

CMC Plan member, and believes IMA incorrectly processed the claim for reimbursement.

Effective April 1, 2012, Healthsmart Preferred Care, Inc. ("Healthsmart") and HCA North Texas Division, Inc. ("HCA") entered into a Hospital Agreement ("Hospital Contract"), attached to the Complaint [Doc. # 1] as Exhibit 2. Neither Columbia nor IMA is a party to the Hospital Contract, but Exhibit B to the Hospital Contract identifies codes and reimbursement rates for certain services when provided by Columbia ("Medical City Dallas Hospital"). The Hospital Contract contains a Dispute Resolution section that provides for binding arbitration. See Hospital Contract, ¶ 5.7(2).

Almost ten years earlier, IMA had entered into a TPA (Third Party Administrator) Agreement ("IMA Contract") with PPOplus, LLC ("PPO"), which IMA signed on December 19, 2002. Under the IMA Contract, IMA agreed to pay claims of Participating Providers (defined to include a hospital "who has entered into a contractual agreement with PPO to provide Covered Services to Beneficiaries") "in accordance with the applicable Plan and the PPO Contracted Rates." *See* IMA Contract [Doc. # 1-3], ¶ 2.2. "Plan" is defined in the IMA Contract to mean a health benefits plan that has entered into an agreement with IMA (which would include the CMC Plan), and "PPO Contracted Rates" is defined to mean "the rates or fees agreed

upon by PPO and Participating Provider." *See id.*, ¶ 1.9; ¶ 1.8. The IMA Contract does not contain an arbitration provision.

Previously, in July 2002, PPO had entered into a Network Cross Access Agreement ("Network Agreement") with Healthsmart, a party to the 2012 Hospital Contract. In the Network Agreement, Healthsmart and PPO agreed to the "repricing of claims in conformity with the provisions of Schedule C . . .." *See* Network Agreement, ¶ 6(c). Therefore, as of July 2002, it appears that PPO agreed to reimburse Participating Hospitals in the Healthsmart network at the rate set forth in Schedule C to the Network Agreement. It appears also that Healthsmart and HCA agreed to different reimbursement rates, attached to the Hospital Contract as Exhibit B, when they entered into the April 2012 Hospital Contract. The reimbursement rates, whether from the Network Agreement in 2002 or the Hospital Contract in 2012, are contained in an attachment to the relevant contract, and are not set forth in the contracts themselves.

In July 2019, Columbia filed a demand for arbitration with the American Arbitration Association. Columbia claims that IMA is obligated to pay for the medical services Columbia provided to a CMC Plan member, and that IMA is required to arbitrate the dispute. Columbia bases its claim that IMA is required to participate

in arbitration on the Dispute Resolution section of the 2012 Hospital Contract between Healthsmart and HCA.

IMA filed this lawsuit seeking a declaratory judgment that it is not obligated to arbitrate the dispute with Columbia. Columbia filed the Motion to Stay and Compel Arbitration, which has been fully briefed and is now ripe for decision.

## II. STANDARD FOR MOTION TO COMPEL ARBITRATION

Congress in enacting the Federal Arbitration Act (the "Act") directed courts to treat arbitration agreements as "valid, irrevocable, and enforceable." *See Epic Sys. Corp. v. Lewis*, __ U.S. __, 138 S. Ct. 1612, 1621 (2018) (citing 9 U.S.C. § 2). The Act establishes "a liberal federal policy favoring arbitration agreements." *Id.* (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

The first inquiry in deciding a request to compel arbitration is whether the parties entered into an agreement to arbitrate. *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016); *Trammell v. AccentCare, Inc.*, 776 F. App'x 208, 209 (5th Cir. June 7, 2019). "Arbitration is 'a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *PaineWebber Inc. v. The Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 462 (5th Cir. 2001) (quoting *United Steelworkers of Amer. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). "Although there is a strong federal policy

favoring arbitration, this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal quotations and citations omitted).

### III.  ANALYSIS

Columbia admits, as it must, that IMA is not a party to the Hospital Contract. Columbia argues that IMA is nonetheless required to arbitrate this dispute because the Hospital Contract and the IMA Contract are "unified," and because IMA accepted direct benefits under the Hospital Contract.

####  A.  Unified Contract Theory

Columbia argues that IMA should be compelled to arbitrate the underlying dispute between the parties because the IMA Contract and the Hospital Contract are "unified." It is well-established Texas law that "instruments pertaining to the same transaction may be read together to ascertain the parties' intent." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000); *Baylor Univ. Med. Ctr. v. Epoch Grp., L.C.*, 340 F. Supp. 2d 749, 754 (N.D. Tex. 2004); *Baylor Univ. Med. Ctr. v. Nippon Life Ins. Co. of Am.*, 2010 WL 330238, *4 (N.D. Tex. Jan. 28, 2010). Where appropriate, the unified contract theory can apply even if the separate contracts were executed at different times, do not expressly refer to each other, and

are not between the same parties. *See Epoch*, 340 F. Supp. 2d at 754, and cases cited therein. The Court may determine that multiple documents comprise, and should be construed as, a single written contract. *Fort Worth*, 22 S.W.3d at 840.

The Hospital Contract and the IMA Contract each contain an "Entire Agreement" provision.[2] See Hospital Contract, ¶ 5.1; IMA Contract, ¶ 5.1. The provision in the Hospital Contract, the contract containing the arbitration provision, states that it is the entire agreement and that "no representation, inducement, promise or agreement has been made, orally or otherwise . . . unless such representation, inducement, promise or agreement is embodied in this Agreement, expressly or by incorporation." Hospital Contract, ¶ 5.1. The IMA Contract, an agreement which had been in existence for almost ten years, is not "embodied" in the Hospital Contract, either expressly or by incorporation. Therefore, the Court concludes that the IMA Contract and the Hospital Contract are not a single, unified contract.

Columbia relies heavily on the Northern District of Texas decision in *Epoch*, in which a Hospital Services Agreement, a Network Access Agreement, and a Payor Acknowledgment were construed as a single, unified contract.[3] *See Epoch*, 340 F.

---

[2] The Network Access Agreement may contain an "Entire Agreement" provision, but large blocks of the contract have been redacted in the copy filed with the Court.

[3] IMA notes correctly that, unlike the situation in *Epoch*, it has never signed a Payor Acknowledgment identifying the Hospital Contract and agreeing to comply with its terms.

Supp. 2d at 755. As a judge in the Northern District of Texas later noted, however, the judge in *Epoch* "was careful to specify that such [unified] contract was created *to the extent that it covered Epoch's obligation to timely pay the plaintiffs' claims*." *Nippon Life*, 2010 WL 330238 at *4 (citing *Epoch*, 340 F. Supp. 2d at 755) (emphasis added). Even were the Hospital Contract and the IMA Contract construed as part of a single, unified contract for purposes of reimbursement rates for Columbia's medical services, there is nothing in the record before this Court to suggest that IMA was party to a single, unified contract "to the extent" it required IMA to submit disputes to arbitration. *See id.* Therefore, the "unified contract" theory does not support Columbia's Motion to Compel Arbitration.

### B. Direct Benefits Estoppel Theory

Columbia argues that IMA is bound by the arbitration provision in the Hospital Contract based on the theory of direct benefits estoppel. Columbia argues that IMA receives direct benefits under the Hospital Contract by paying only the lower, negotiated rates, and by having access to a larger network of health care providers.

Non-signatories to a contract containing an arbitration provision may be compelled to arbitrate based on direct benefits estoppel. *See Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006). The direct benefits estoppel theory applies to "non-signatories who, during the life of the contract, have embraced

the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Id*. at 517-18 (internal quotation and citation omitted). "A non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010). The second method of "embracing" a contract does not apply in this case because IMA is the defendant in the underlying dispute, and it is not suing Columbia to enforce the terms of the Hospital Contract or otherwise assert claims that must be determined by reference to that agreement.

Direct benefits estoppel through knowingly seeking and obtaining direct benefits under the contract, the other means of "embracing" the contract, requires a showing that the non-signatory knew about the existence *and the terms* of the contract containing the arbitration provision. *See Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 474 (5th Cir. 2010) (holding that absent evidence that the non-signatory knew of the terms of the contract containing the arbitration provision, direct benefits estoppel did not apply); *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 921 F. Supp. 2d 685, 694 (S.D. Tex. 2013) (holding that direct benefits estoppel did not

apply because, even if the non-signatory knew of the contract's existence, there was no evidence it "had actual knowledge of the terms" of that contract). Columbia has failed to show that IMA had knowledge of the existence and terms, including the arbitration provision, of the Hospital Contract. The Hospital Contract is between HCA and Healthsmart, who has a separate contract with PPO, who has a separate contract with IMA. The IMA Contract does not reference the Hospital Contract terms, specifically the arbitration provision. In the IMA Contract, signed almost ten years before the effective date of the Hospital Contract, IMA agreed to pay claims of Participating Providers in accordance with the applicable Plan and the PPO Contracted Rates. *See* IMA Contract, ¶ 2.2. The only information IMA needed to fulfill this obligation under the IMA Contract was a copy of the Plan and the PPO Contracted Rates. For purposes of the IMA Contract, the PPO Contracted Rates, whether from the Network Agreement in 2002 or the Hospital Contract in 2012, are contained in an attachment to the relevant contract, and are not set forth in the contracts themselves. There is no reason IMA would need to know the terms of the Hospital Contract, and there is no evidence that it knew those terms, specifically the arbitration provision.[4]

---

[4] In its Reply, Columbia submits a copy of a letter from the Senior Counsel for HCA to the General Counsel for Healthsmart, quoting select portions of the Hospital Contract. *See* October 14, 2016 Letter, Exh. 6. A copy of the letter was sent to IMA's legal department. At no point in the four-page letter is there any mention of the arbitration provision in the Hospital Contract or any other reference to arbitration.
(continued...)

*See* Affidavit of Nicola Sumpter, Exh. A to Response, ¶ 3. Absent knowledge of the terms of the Hospital Contract, IMA could not "embrace" that contract and its arbitration provision. As a result, direct benefits estoppel does not apply.[5]

## IV. CONCLUSION AND ORDER

IMA is not a party to a contract containing an arbitration agreement. The Hospital Contract and the IMA Contract are not unified such that the arbitration provision in the Hospital Contract binds IMA. Columbia has failed to demonstrate that direct benefits estoppel applies to require IMA to submit its dispute with Columbia to arbitration. As a result, it is hereby

**ORDERED** that Columbia's Motion to Stay and Compel Arbitration [Doc. # 9] is **DENIED**. It is further

**ORDERED** that IMA's Motion to Strike [Doc. # 16] is **DENIED**.

SIGNED at Houston, Texas, this ___ day of **December, 2019**.

---

[4] (...continued)
This letter fails to present evidence that IMA knew the arbitration terms of the Hospital Contract.

[5] The Court notes that the Hospital Contract and the IMA Contract each state that no third party is a beneficiary of the contract. *See* Hospital Contract, ¶ 5.8; IMA Contract, ¶ 5.4.